With that, we'll take up the only case we have today on the argument calendar, Cardenas-Ornelas v. Johnson, and we have the pleasure of having a law student argue, am I correct? So that's wonderful. Welcome to the Ninth Circuit. You have 15 minutes aside. You can reserve whatever time you wish for rebuttal, but you have to watch the clock yourself. And so whenever you are ready, counsel. Oh, okay. Okay. Yes, sorry, got that wrong. Sorry. We've also kind of made a deal that if we ever have this with UCLA Law School again, that you will all schedule it in Pasadena. We've all decided that, you know, I love working in the garden and the rose garden in Pasadena, so, and I'm here in Las Vegas, so it doesn't. So you prefer Pasadena to Las Vegas? Well, since I'm here all the time, you know, it kind of makes sense, you know, especially, like I said, I don't think you can beat Pasadena for prettiness as far as the courthouse. Well, it is a lovely courthouse, and there are many fun stories that I will not bore you with as to how the Ninth Circuit acquired the courthouse. I guess the other thing you could do is, you know, if it's ever before your honor, you know, we could always do this in Hawaii. There's a long line. Okay. So again, sorry about mixing up appellant and affilee, and whenever you are ready, counsel. Thank you, your honor. I'd like to thank the court for allowing me to present my arguments on behalf of appellant's defendants. I'm Chris Davis. The district court erred when denying Gordon Johnson's motion for summary judgment asserting qualified immunity with respect to Mr. Cardenas Ornelas' outdoor exercise claim because the court held, one, that outdoor exercise is not mandated by the Eighth Amendment, two, held that otherwise meaningful recreation opportunities provided by working in training and rehabilitation programs may substitute for any exercise requirement, and three, held that this court should not second-guess prison officials when combating the unprecedented COVID-19 pandemic emergency which was at issue in this case. Also, the district court erred when denying Gordon Johnson's motion for summary judgment asserting qualified immunity with respect to Cardenas Ornelas' 14th Amendment equal protection claim because, one, Cardenas Ornelas was not treated differently from other offenders who were in units exposed to COVID-19 as required by this court's, as set forth in this court's decision in C Plain, two, Cardenas Ornelas was not similarly situated in all more superior respects with offenders in non-COVID-19 units who were provided yard time as set forth in the Smile Direct Club, this court's case, and three, restricting non-essential activities such as yard time to prevent the spread of COVID-19 clearly satisfies this court rational basis test. The court further erred when denying Gordon Johnson's motion for summary judgment with respect to Cardenas Ornelas' state law claims because, one, the district court lacked jurisdiction as Nevada has not waived its sovereign immunity protected by the 11th Amendment and, two, Gordon Johnson did not violate the Nevada Constitution for the same reasons he did not violate the federal Constitution. So on the issue of the yard time, why wasn't it clearly established by 2020 that inmates have a right to exercise and to outdoor time and that, in fact, that's a basic human need? Because I read our case law and the Supreme Court case law. Well, Your Honor, Your Honor, the court, what we're dealing with is not the opportunity to exercise. We're dealing with the opportunity to exercise outdoor and, and in Norbert, the Norbert says there is no categorical requirement for outdoor exercise. Cardenas Ornelas' Eighth Amendment claim fails because when facing a genuine emergency such as the unprecedented COVID-19 pandemic, the Supreme Court and this court have repeatedly held that decisions made to combat emergencies should be made by prison officials and not by judges and juries. Worden Johnson is shielded by qualified immunity because no authority requires offenders to be released from quarantine for purposes of outdoor exercise when the quarantine was instituted for the safety and security reasons during the midst of an unprecedented global pandemic. But, but, but counsel, I, I agree with you that at some level we have jurisdiction here to consider the qualified immunity appeal. But as my colleague said, I think our cases, Thomas v. Ponder, but other cases establish that out of cell exercise is a fundamental right. And, uh, you're arguing that, uh, something else is good enough, right? That's, that's true. That's correct, Your Honor. But, but why wouldn't that really be a fact issue, uh, as opposed to whether, whether whatever you're arguing is good enough that if there's a clearly established right, why wouldn't that be something that is too granular for us to take up on appeal? Well, because you mean, you mean saying that you don't have jurisdiction because there's, there's a sufficiency of the other argument? Is that what you're saying? You know, the, if we're looking at the Delta between what they were constitutionally entitled to and what you say they got, um, why, why would we have jurisdiction to really look at that as opposed that wouldn't that be a disputed type fact? No, because Your Honor, because we're in a qualified immunity substantial. When you're dealing with qualified immunity, you don't deal with issues of fact. What you deal with is, is that you take the facts and construe them liberally in favor of the plaintiff. And if, then you have to find a case under those factual scenarios that would be, that would notify us that we're violating the right. But isn't, aren't the facts in the light most favorable to the plaintiff? They were denied meaningful exercise and that there was a right that was established for many years that this is a basic human need for prisoners. And that what you're saying qualifies, um, just in their view, isn't exercise. No, because you got to go to the Norbert case and it says the constitution requires jail officials provided outdoor recreational opportunities or otherwise meaningful recreation. And what's the otherwise meaningful recreation walking, walking to the factory? Well, not only that, also working in the factory. That's, that's, that's working, working in the prison industries is a rehabilitation opportunity. That's expressing the type of program. But that's, but I guess to judge Bennett's point, why is that not a factual dispute? Because I take it the other side of saying that's not a meaningful recreational opportunity. And, and as you said, we're not here to gauge the merits of factual weighing. Right. Okay. But the thing is, is what you'd have to then have is a case that says, that tells us that that's not, uh, you'd have to have a say. Well, working in prison industries is not an otherwise meaningful recreational opportunity. I'm not sure that's true. I mean, we, we held in Hampton that case law doesn't have to catalog every single way in, in which conditions are constitutionally inadequate. So, I mean, it kind of goes back to the question that I asked you at the outside, outside, which is whether there, there isn't enough in case law to establish the principle. Well, the thing is, is that you've told us that we can, what you're saying is you're because what you're telling us is, hey, you can give meaningful recreational opportunities can substitute for exercise, outdoor exercise or for exercise, because you've said that you don't require outdoor exercise in Norbert, but it can substitute for exercise and then tell us, hey, but guess what? You got it wrong. But counsel, let me give you what you might view as a reductio ad absurdum type hypothetical. What if your argument to me was, well, they got to walk around in their cell, you know, it's 20 feet around. They get to walk around in their cell, circle their cell as much as they want. That's exercise. So they don't get anything else. Would the argument be the same? Well, the thing is, is it, yes, it would. Well, it would be the same in that you actually have cases that say exercising your cell alone is enough to satisfy the exercise requirement. What, what if you could, so then that would be the case for virtually any prisoner, right? Any prisoner could walk around their cell as opposed to outdoor in the yard? Well, it depends, you know, it depends on the level of confinement there is. I mean, there's been certain instances where they say, hey, if you can't get out of your cell at all. I mean, there are cases that say, if you can't get out of your cell at all, and you're stuck in your cell 24 hours a day, and you're there all the time, it's, I would say, that may peel the line where you don't have it. But that's not what we have in this case. This case, he was out of his cell 16 hours a day. I mean, it's not the same type of scenario at all. And every, there's not, in fact, there's not one case where you can say, there's not any case where you can point us to, where a prisoner was out of his cell for 16 hours a day, doing meaningful recreational opportunities, and then found an age amendment violation. So I should know the answer to this question, and I apologize for not. But in any of the grievance denials, did the warden or the warden's agent say, working in the factory is exercise? Your Honor, I don't think that was an issue even raised, one way or the other. Well, I mean, I don't know about whether it was raised or... They were focusing on, when they were doing the grievances, they were focusing on that, hey, we're in the COVID pandemic. And that gets us to the other case that, and in fact, before I get there, I want to talk about the Eighth Circuit and Henderson. Because Henderson actually dealt with this issue, which is, and held that an eighth amendment rights were not violated by equating an inmate's work assignment at a cell opportunities with a three-hour-per-week exercise requirement. And as Your Honor said, he could undisputably, okay, exercise in a cell. He had 16 hours of meaningful outside training. He could walk to and from outdoors, so he wasn't like he wasn't getting outside at all. He could walk to and from prisoners twice a week one way, twice a week the other way. And therefore, he doesn't meet the minimized... And that's a standard you've got to remember. He doesn't meet the minimal civilized measure of life necessities, which was sufficiently grave to form the basis of an eighth amendment violation. That's the standard we have to violate. And he was given the minimal civilized necessities. I mean, you just really can't say that, you know, the prison, the warden has discretion and say, he's got to be able to choose between these two different things. And he says, we decided we did the warden in his discretion, which he's allowed under Norwood. And you've got to remember Norwood, because it says if there's an emergency situation, we've got almost unlimited discretion on how to handle that emergency. But one of the difficulties that I have with your argument there is the same emergency situation, and there were other units that were allowed exercise time, but not unit nine, as it's been alleged. So what does it, you know, if we're getting into factual details about this, why is it that the emergency situation only applied to this unit? Because it was his unit, not just unit nine, but his unit and other units that had inmates that came in contact with COVID-19. Those are the units that weren't allowed to go to the yard. And the reason why they couldn't go to the yard was because the yard, undisputed in the record. But there was an inmate that was, I guess, tested positive in what, late April or May. But they were not allowed yard access throughout the entire year. So what does it, I mean, I don't understand the record to be that there were inmates testing positive in succeeding months throughout the year. No, it's, you know, it's, well, first of all, there's the evidence in the record is, is that any unit that had an inmate that tested positive for COVID-19 was not going to the yard. For how long? Well, it was. Six months? It was through, it was through, actually, there were times that were, it was a one, 40-day period and then a seven-month period. And Ms. Cardenas-Arenas. And so is there, was there a prison policy that said that if someone tested positive for COVID, no one in that unit could go to the yard for six months or 90 days or? No, it was, it was, it was because we were doing an ever-evolving emergency. You don't remember what COVID-19 was. It was a unique situation. Nobody's ever dealt with something like COVID-19. The prison was trying to do, trying to do the best they could do to protect the inmates and make them safe. I mean, counsel, I, I mean, one of the, one of the things that we're dealing with here is this, what to me is a disconnect. And I think for me, it only comes up on the eighth amendment claim, not the equal protection claim, but a disconnect between all of this terrible stuff, which the pandemic is, is going around and we have to protect everybody, but it's okay to send them to work with all the other inmates from their unit in the factory. So, I mean, there is a significant, to me, inconsistency there. Not necessarily an irrational inconsistency for equal protection purposes, but a significant factual inconsistency between all this horrible stuff is going on, but we have to keep the factory going. So we're going to send the inmates to the factory, even when they have COVID. It's not that we've had to keep the factory going. It's that we were trying to provide prisoners with the maximum amount of recreation opportunities that we could provide. And we could provide it in prison industries because we had a fogger that could defog it. We had, we had only, we had one, one unit at a time. Again, counsel, is there anything in the record where any declaration from any prisoner, prison officer said the factory work was recreation? Well, no, your honor, there's not a declaration, but that's what it is. This is a recreational opportunity. I mean, that's what it is. I mean, that's how it's described in Nevada statutes. That's how it's described in, it's a privilege that inmates are given. Can we switch to the equal protection argument? And I wanted to ask you this. What standard should we apply to that claim? Should we apply Turner versus Safley or rational basis review and why? It's clearly a rational basis review. When, in the cases they cited, they were, it dealt with a religious classification. Here, we don't have a specific classification or a fundamental right. And therefore, it can only be rational basis review under the Botnell case. Was rational basis review applied in other non-First Amendment cases? I mean, sorry, was Turner applied in other non-First Amendment cases? You mean, well, in other, The Turner standard for prison conditions, is it applied only, as you understand it, in the context of First Amendment type claims? I think it's applied in not only First Amendment, but other similar types of constitutional law where it's not strict scrutiny. If it's, for example, if it's a racial classification, for example, you would be applying strict scrutiny. But I think there's other suspect classifications. I also want to get back to the Eighth Amendment, because the other reason why you can grant summary judgment for it, because there's no way that Warden Donson could have known anything about that he was, that this was harming Cardenas-Arenas at all. He knew he was going out to prison industries. He knew he was doing this. And his thing that he says that he's gotten muscle atrophy and things like this, there's no medical evidence in the record of that. He can't do it. And under Garwood, Garwood says, hey, when you're fighting an emergency situation like this, you're required to defer to the prison. I mean, if you decide against Warden Donson, what you're saying is you're going to be turning this over, okay, to not to Warden, to prison authorities, who this court and the Supreme Court has always said needs to be the one that makes these decisions. But you'll be turning it over to judges and juries, which this court is saying it can't do. I'm trying to understand your argument. Warden Donson was the one that signed the denial of the first appeal, the first formal grievance in which Mr. Cardenas-Arenas said you're violating my constitutional rights to exercise. So why wasn't he subjectively aware of those conditions? Because it's not enough that he's just deprived of outdoor exercise. He's got to show that something happens to him because of it. He's got to show that he's suffered some adverse effect. It's not a perceived thing. Didn't he say that he's been locked in his cell for 23 hours a day for many months at a time when other units have been out? But he couldn't say that because he wasn't. He was there for, he was going out. But did he say that? Yeah, I think he did. So then why isn't that enough for the warden to have been subjectively aware of the conditions that were complained of? Because being deprived of exercise is not enough. It's got to be, he's got to suffer some adverse effects on top of that. And so your argument is he did not, he was not aware of any adverse effects from the complaint. And not only that, he was not aware that it was harming him because he was trying to protect him from a much more serious danger, which was COVID-19. I think the thing that's telling is, is there's nothing in the record that says that Cardenas-Hernandez contracted COVID-19. And I think that's because of the protections that warden Johnson instituted based on the directives that he was required to follow that he could not change from the Nevada medical director. All right, thank you, counsel. You're out of time, but we'll give you some time for rebuttal. Now, it really is your turn. Good morning, your honors. Ali Zenworth, certified law student on behalf of Mr. Cardenas-Hernandez. I want to respond to the Norbert argument. Norbert needs to be taken in the context of the cases that came before it. For instance, in Shorter v. Baca, the plaintiff was given access to a recreation room where she could participate in group activities, watch television. This court held it was insufficient. In Keenan v. Hall, the plaintiff was given access to an indoor space with access to sunlight. That was insufficient. So Norbert in context means there's a presumption for outdoor exercise. And when that is not given, it needs to be a space equipped for exercise, which is not what Mr. Cardenas-Hernandez was given. And finally, as to the deference requirement, this court has been clear, again, in Shorter v. Baca, Thomas v. Ponder, and the cases that came before it. Then when there's substantial evidence in the records showing that the justification given is not warranted or unjustified, this court is not required to give deference to prison officials. I'd like to ask a question about the 14th Amendment claim. What evidence do we have before us, other than the allegations and the complaint, unsworn allegations, of the warden's supposed dislike of inmates in protective segregation? What is clear is that other units were getting exercise and Unit 9 was not. And there was no legitimate justification for that, and especially given it involved a constitutional right, that is enough. But the people in Ward 9 had COVID, right? The record does not substantiate that. The record does substantiate that. I mean, for example, I'm looking at your client's declaration of Trenton Paul Harris, which specifically says, talks about COVID. Yes, but between the end of June to the end of December, there were no known COVID infections in Unit 9. And further, starting in October 17th, the Warden Institute of Policy where units will no longer lock down the entire unit when someone in that unit had an infection or tested positive. Therefore, at least from that period onward, and the only evidence in the record showing... But to get to my colleague's question, that may be so, but how does that show a personal animus toward the people in this unit? Yeah, that's the question. Yeah, thank you. Yeah, there is... Charcot would be free to make clear there's no animus directly required to be shown. It just needs to be that people were treated differently. And that is what we have here without justification. And there is no justification for why Unit 9 was denied exercise. There's no legitimate justification. Well, when I'm looking, for example, at then Associate Warden Bean's declaration at ER 56, he said, for example, inmates in units who did not have persons suspected of contracting COVID were permitted to resume yard time and permitted phone time Unit 9. Cardenas Analysis Unit, however, remained in quarantine based on inmates in that unit having tested positive for COVID. While quarantined units were not given yard time, they were able to exercise in the yard. Despite being quarantined, inmates were able to continue working because only inmates in Unit 9 worked in prison industries. So, I mean, that may not be a great reason, but it's a reason. And we have to judge the equal protection, I think, under rational basis. Charcot would be free to more generally held that Turner applies to equal protection claims. But regardless, that is a factual dispute, which this court must assume at this stage. And my most favorable to the plaintiff, which outside of that declaration is not substantiated by the record. The prison data, the data provided with the prison release to the public shows that there's a 91 day in the prison where no one in that entire prison had COVID. Can I ask you the same question I asked your friend on the other side? You've cited to Turner versus Safley as the basis for the equal protection review. And normally we'd review equal protection for non, you know, for non class, non suspect, suspect classifications under rational basis. So why, in your view, should Turner apply here? First, the law may be odd, but that's what Charcot v. Schreier more generally held that Turner applies. And the Fourth Circuit and King v. Rubenstein applied Turner to a class of one claim. And especially there may be some political, like some policy motivations given where people are particularly vulnerable in a prison, some heightened scrutiny should apply. But regardless, this court is bound by Charcot v.  And was that a, but Charcot was a First Amendment religious discrimination claim, right? And we're not dealing with a religious discrimination or race based discrimination or something else that might suggest heightened scrutiny. And so I think the argument on the other side is, it's not Turner when you don't have those kind of particular claims. So tell me why Turner should apply to all prison cases. Especially here where there's a constitutional violation. And Charcot didn't cabin its holding to equal protection to heightened scrutiny claims. It just said more broadly that the Turner applies. Okay. And so do you, if you were to be required to argue equal protection under rational basis scrutiny, does your claim fail, do you think? No, because sending inmates to work is not a valid justification. But again, when we look at, if we're looking under rational basis, we look at any possible justification, right? Correct. And in addition to any possible justification, we have two declarations, one from Associate Warden Bean and one that your client, thank you, put in from Trenton Paul Harris, which says that taken together people in 19, in nine rather had COVID and people who would be in the yard didn't. And the only people working in the factory were from units with COVID. So again, that may not be a great reason, but it doesn't strike me as irrational. Why is it irrational to say it's okay to send them to work because it's only from the COVID units. But if we put them out on the yard, they're going to be mixing with units with people who didn't have COVID.  You and I was not a COVID unit. It's the defendants, there are other units that have COVID too. There were 72 positive cases in that prison by the end of December. And were they working in the factory? No. And that's what they were saying. They're saying we did not send to the factory people from units who didn't have COVID, only the ones who did. So again, why is that an irrational reason for sorting the factory from the yard? Because between the end of June and the end of December, there are no known infections in unit nine. And during that period, other units were getting exercise, unit nine was not. Can I ask you to turn to the 11th, to the state law claim themselves and state sovereign immunity? Why shouldn't the state law claims be dismissed under sovereign immunity? If the Nevada statutes require that if you're suing a state official acting in their official capacity to name the state of Nevada itself and Nevada hasn't consented to suit, how can you bring the claim in federal court? Because the MAC made clear that it stated that self-executory causes of actions cannot be abridged or impaired by statute. Therefore, what the Government Liability Act says is irrelevant for constitutional claims, which is what we have here. And that's shown by MAC itself. So walk me through that, because it wasn't clear to me what that meant. If you have a state constitutional provision, let's say cruelly unusual punishment, why is that right being impaired by a state requirement that you name the state of Nevada in a suit against it? Because it controls the... It's a procedural rule. It's saying if you want to bring a claim, you have to join this party to it. So why, whether or not it's self-executing seems to me a little bit beside the point. It's a procedural rule to say the state has to be included in the lawsuit. Why is there any impairment of the constitutional right? MAC itself was also a suit against a prison. It was against the Nevada prison. And there, the plaintiffs did not name the state of Nevada as a defendant. But that was about an impairment of a federal interest. So here, I'm just not sure. I don't know. Walk me through it. Map out. What is it about naming the state that would impair someone's interest in raising a claim? It's... It just puts a requirement on it. And again, MAC was actually a case in federal court. But the question was certified. But it was a suit against the prison. And the plaintiff and the state of Nevada was not named as a defendant. So, counsel, if we rejected your argument and putting aside sort of other issues like this particular state court claim, because Nevada can be sued in state court, this could be brought in state court, right? It could be brought in state court. But given that he has federal constitutional claims, it is... Well, they could have been brought in state court too, right? Correct. But he has the opportunity to choose his forum. Well, you're right. He has his opportunity to choose his forum. That's absolutely true. But part of forum choosing is taking into account what the rules are of the particular forums. And here we have 41.031 that says the state of Nevada does not waive its immunity from suit conferred by the 11th Amendment. So, I mean, that's part of the calculus that goes into where you bring your suit, right? Yeah. But it's not a suit against Nevada. It's a suit against the individual prison officer. But Nevada gets to define how its state laws work, right? Correct. And Nevada says you can't sue basically the warden for a state law claim unless you name the state, right? But the Nevada legislature can't supersede the constitutional requirements. And again, this is just like in MAC, where the plaintiff sued an individual officer of a prison. He did not name the prison as a defendant. MAC held that was fine. But MAC was not about sovereign immunity, right? Did sovereign immunity come up in MAC? I believe... I thought it was a certified question. So it wasn't a sovereign immunity case, was it? No, but it's exactly the same case as here, where the question... The question... Part of the question was qualified immunity. Qualified immunity doesn't apply to sovereigns. And the court held that the individual officers were liable because they were not sovereigns. They were individual officers who were sued in their individual capacity. And finally, I would just go back to the record is when conceived in the light most favorable to the plaintiff, there is no substantiation for the near complete denial that he experienced. And this court has been clear that emergencies can't be used. To allow prisons to use that as a justification when the denial was otherwise motivated. And here, as the district court found, a jury could find that it was pretextual, and that the true motivation was staffing considerations and desiring to put Mr. Cardenas and others to work. And that is not sufficient to deny someone outdoor exercise. And unless this court has further questions, I would... All right. We thank counsel for their argument. Thank you. And counsel will give you two minutes for rebuttal. Again, I'd like to thank the court for allowing me to speak again and giving me this little bit of extra time. I want to make one thing clear. Opposing counsel has represented several times and referred to data that's nowhere in the record that supposedly some law school collected that was on some website. It doesn't say how they collected it, where they got it from, how complete it was or anything. It's clearly inadmissible and cannot be considered by this court. And so I just want to make sure that the court's aware of that. The second thing I want to emphasize again is that when we're talking about qualified you must find a case that would put Warden Johnson on notice beyond debate that he was violating clear established law. You can't do that because this court told Warden Johnson that otherwise meaningful recreation could satisfy the requirement. You can't say, well, and the decision to provide it with those additional things to violate it just to be saying, you know, it's not beyond debate that it wasn't given that, that wouldn't be that. That's the standard you have to meet. You have to meet the standard of saying that beyond debate, he'd have to know that not giving him time in prison industry didn't satisfy that requirement. Second, you have to give the actual knowledge requirement. You've got to show that with respect to this, you've got to show, hey, where has there been a case like COVID-19, which there isn't because there wasn't anything like COVID-19, where this court didn't give him discretion to do it just exactly how he did it. And I want to remind the court of free hot, which wasn't cited in our brief that says free hot. This court determined that COVID-19 pandemic was an unprecedented and evolving health problem and that constitutional standards recognize that prison officials must have discretion in addressing a complex problem such as COVID-19 because a constitutional line cannot be drawn based on a court's idea of how to operate a detention facility, especially when the prison here undisputedly was attempting to protect inmates. And since the prison was doing their job of trying to protect Cardenas-Reyes and clearly did it because he didn't contract COVID-19, I think this court has to rule in favor of Warden Johnson on all claims. And I appreciate your time. Thank you very much. All right. We thank counsel for their arguments. We particularly thank counsel for the plaintiff for doing an excellent job as a law student and thank counsel for their arguments. The case just argued is submitted. And with that, we are adjourned for the day.
judges: BENNETT, SANCHEZ, THOMAS